My name is Tom Boulder. I'm here representing the Attelment Company Construction. And after the last argument, I must acknowledge some trepidation, because one of the issues here is what this may mean, and one of the issues here could be how we should better draft the contract. This appeal addresses whether or not the Federal Arbitration Act, the contractual arbitration provision that was drafted by the Adelaide City of Redfield, empowers my client, Quam, to compel arbitration despite the City's subsequent refusal to agree to arbitrate. Now, there's no question in this case that the FAA applies. There's no dispute about jurisdiction. The District Court has jurisdiction to hear the motion to compel. This Court has jurisdiction to hear our appeal from the denial. There's no dispute that we have to do an overview. There's also no dispute that the policy of the FAA favors arbitration. In this Court, the ITT Hartford case held that there's a presumption of arbitrability. There is a contractual arbitration provision, and here there is a substantial arbitration provision. There's also no dispute, a reasonable dispute, that the City or its agent drafted the provision that we're talking about. This is a public contract, so Quam could not have any part of it. Who was the project engineer, public or private? It's private, but it's the City's contract. They are the agent of the City. For example, in the underlying law... You just mean, who drafted it? I mean, is it a typical construction industry drafted agreement? It doesn't read like it. No, it's not an agency agreement at all. It appears to be some sort of a manuscript agreement. Frankly, there's nothing in the record other than the statement of the City in response to the motion saying that its contractor, Project Engineer, drafted it. So we don't have a record to construe it against the City, as you argue? I believe we do, Your Honor. Why? Because the City advertised this particular contract for bid. This is a competitive bid. It has to be, it is an adhesion contract for any entity that agrees to bid for the contract. We cannot negotiate it at all. We have no opportunity to do that. If we did, it would be a violation of competitive bidding. Somehow I doubt that there's a record showing that. Those aren't the kind of facts that get developed in a motion to compel arbitration. Fair enough, although the contract seems to be a record. That's fine, but this counter-preferendum stuff among when you've got two substantial entities on either side in an arm's length deal. I don't care if it's public or private. I'm deaf ears to that one. Well, Your Honor, I'll just note with respect that you shouldn't be deaf ears to that, because on a competitive bid, the obligation is for all bidders to bid to the same contract provided by the public entity. So there can't be no negotiation. If one entity negotiates, that destroys competitive bidding. You're not on the same plane with them. You can't do it. The district court decision here said that there's nothing in the language of the contract to create a valid agreement to arbitrate, and that the FAA clearly states that the language of the contract prevails over the statute. That decision failed to address two things. It did not address American Italian pasta, and it also did not address much less try to overcome the fact that the provision here, the contract includes a specific provision that says a condition precedent to any right of legal action is an arbitration decision. So to avoid making the phrase meaningless, what is if parties agree to arbitration? What does that mean then? If you look at American Italian pasta, I think you're going to get to this main... No, no, that language isn't in that. Forget that case. Just answer the question. Because that language wasn't in that case. Well, actually, that language does have, if the parties agree... That the dispute can't be settled. Correct. Night and day. I don't know. So put American pasta aside, a two-to-one decision in which different language was at issue, and answer... I'll go back to the fact that I don't think the language is materially different. But in any event, you've got, if the parties agree, as I interpret... And I'm going to go back to American pasta for a moment. American pasta says the use of the term may in arbitration provision means will at the right, at the choice of either party. But then you're talking about a different sentence. I'm talking about the introductory phrase in the sentence that says if parties agree to arbitration... Correct. I mean, why would you even have that in there if there was no... If after your mediation fails, they were required to either arbitrate or walk away? Why would you even have that? I think there's two answers to that. First, again, it's in the same paragraph as the main language, but similar to American pasta. There, American pasta said it's implicit that may include the agreement of both parties. Here, there's an argument to be made that including that language afterwards is simply making express what is implicit under American pasta. The second part of it is if you want to read every provision in that paragraph in isolation, you also have to go down to the lower sentence, which says an arbitration decision is a condition precedent to any right of legal action. If you're going to read each one in isolation, that one says expressly you have to have an arbitration decision. In that case, you have a clear ambiguity. One says you have to have agreement. One says there has to be an arbitration decision. Under the FAA, you have to. No. If the parties agree to arbitrate, then the language of American pasta about condition precedent kicks in. If the parties don't agree to arbitrate, then obviously either one can go to court. Yes, Your Honor. However, if the parties agree. Well, I was going to say, and probably Judge Logan would say it, if the parties agree, then you get into your paragraph where it says shall be a condition precedent to any right of legal action. But that follows the phrase if the parties agree to arbitration. But if you won't. Well, first setting up what the rules are. If you agree to arbitration, then you can't go out and sue until you arbitrate. But that takes away from both American Italian pasta and the South Dakota law, which says you can't read out language and make it superfluous. And in this case. What are we reading out? You're reading out the language that says an arbitration decision is a condition precedent to action. No. Yes, but that follows if the parties agree to arbitrate. Your Honor. I mean, you're breaking this up in a completely irrational way. If the parties agree to arbitrate, then arbitration is the precondition just as it is under the Federal Arbitration Act generally. But that characterization is exactly our argument, Your Honor. If the position of the way to interpret this is you only have to have an arbitration decision as a condition precedent to legal action is if you agree to arbitrate. It completely makes it a non-condition precedent. What you're essentially saying is it is a condition precedent only if I subsequently agree that it's a condition precedent. That's not what it says. It says it's a condition precedent. And looking at American pasta again, the basic of that decision is, look, if this language isn't necessary other than requiring arbitration, you have to interpret it to require arbitration. There's absolutely no reason to put that condition precedent language in there other than to make it a condition precedent. Every party has got the right, regardless of contract, to agree to arbitrate later. So adding the language of it as a condition precedent adds nothing to that if it is not in fact a condition precedent. But the clause, and that's what troubles me because that was part of the reasoning of American pasta. And it's logical that if it's all just everybody can do what they want, why do you have to say anything at all? Well, the reason here is because they've agreed to mediate under the American Arbitration Association rules. Most people that agree to mediate under that institution's rules likewise agree to arbitrate. So if you don't, if you are a party and you're willing to commit to mediation but not to arbitration, then you would word it exactly this way, wouldn't you? No. You would word it. I would agree with you to the whole. Anybody can agree to mediate. You don't need a contract to do that. Anybody can agree, any two disputants can agree to arbitrate. You don't need a contract to do that. But if you want to agree, if you want to commit in advance to agree to the first half, the least binding half, but not to the second half, it seems to me you'd write it exactly this way. And I disagree with that on two points. One, again, the distinguishment from, and I see my, can I, can I finish? Finish your answer. Yeah, okay, thank you. American PASTA had the same regime. It said you will do an informal, you will do ADR, then you will go to arbitration. This one says you will go to ADR through the AAA, and if it doesn't work, you'll go through arbitration. Again, if you want to write it that you're just going to say we're agreeing to mediate through the AAA and not agreeing to anything else, you say that. Or, frankly, you say nothing. If you say we agree we're going to mediate through the AAA and don't say anything else beyond that, we're going to court. But if you include language after that about may arbitrate, and specifically if you include language that says an arbitration decision is a condition proceeding to any right of mediation. I understand. Thank you. I will give you a minute to rebuttal. Thank you, David. Good morning, Mr. Shaffer. Good morning. May it please the court, counsel. My name is Mike Shaffer. It's my privilege to represent the city of Redfield in this case. The issue in this case is whether or not Guam and the city of Redfield agreed to arbitrate their contract dispute here in the Senate. It was submitted on a Section 4 petition under the Federal Arbitration Act to Judge Kornman. Briefed by the parties, Judge Kornman issued a decision essentially holding since the contract included a provision that said if the parties agreed to arbitration, the following will apply, that the parties had not agreed to arbitration. The court then denied the motion to compel this appeal followed. Now, the court's role in looking at a case like this on a motion to compel arbitration typically is twofold, to determine whether there's a valid contract to arbitrate, and if there's a valid contract to arbitrate, whether the subject of the dispute is within the scope of the arbitration. The only issue before this court is the first question, whether there's a valid contract to arbitrate. Guam has cited a number of cases concerning the proposition that there's a presumption favoring arbitration and that questions should be resolved or doubts should be resolved in favor of arbitration. Those cases all apply to whether a particular matter is within the scope of arbitration. They don't apply to the case of whether the matter is subject to arbitration in the first place. Now, in this case... But not many of those cases deal with drafting like we have here. They're third parties and other complexities. That's true. So the agreement to arbitrate cases is a much smaller universe, and they're not cases that look like this one in my experience. That's right. In a lot of our labor disputes, where there's an absolute valid agreement to arbitrate, the question is... No, no, I'm talking about the Kaplan line of cases that you're relying on. In other words, whether the parties actually... Actually agree. Agree. The issue that's for the court, not for the arbitrator. Right. And in Kaplan, the court held that Mr. and Mrs.... But most of those are third parties and others who were outside the scope of the agreement to arbitrate. I think that's true. Here we have one, and your defense is, well, it was drafted to leave my client in out. And I must say, if I can read it that way, I've indicated why I can read it that way, but whoever drafted it should be fired. Well, and I don't know that it's in the record, but it was, I think, drafted by Clark Engineering, an engineering firm, in this case. Well, they can be fired. I mean, you know, if you wanted to say, I'm agreeing only to mediate, but I'm reserving the right not to agree to arbitrate a dispute that can't be mediated, you wouldn't leave us this way. Well, I think... At least, I hope the law students in this room would. Well, I understand what you're saying, but the point is, the contract provides that the parties... It says, if the dispute is not resolved through mediation, the parties may submit the controversy or claim to arbitration. If that sentence ended there, it would probably fall under the American Catalia-Pasta case, but it doesn't. It has the following provision. It says, if the parties agree to arbitration, the following will apply. And then it goes on. It sets out the procedures for selecting arbitrators. And in those procedures, it refers to the party demanding arbitration. Who is that? I think it could be either party, but if one party demands it, the other party would have to agree, or else this language is mere surplusage and means nothing. So demand doesn't contradict with agree? I don't think so, Your Honor. And in fact, if you look at the American Pasta case, the court must have been presented with that question. Because in the American Pasta case, the provision said, if both parties agree that a dispute or disagreement is of such a nature that it cannot be settled and is provided for above, then such dispute or disagreement may be submitted to arbitration in accordance with the rules of the American Arbitration Association, et cetera. The court went on and specifically pointed out that the phrase, if both parties agree, in quotations in that article referred to the inability to reach a settlement, rather than to the submission of the dispute to arbitration, suggesting that if that was the language in American Pasta, the result would be different. The point here is these provisions are not irreconcilable. In fact, the rules of statutory construction in the court, when it interprets this provision, has to apply ordinary principles of contract law, requires that the contract has to be examined as a whole. All provisions have to be read together to construe the contract's meaning. And a contract cannot be interpreted in a manner that renders a portion of it meaningless. Well, if the parties have to agree before it can proceed to arbitration, who's the demanding party? It could be either party, but they still have to agree. Whoever said it first. Whoever said it. The provision has to mean something. It can't be read under Quam's analysis and Quam's interpretation of this contract. They essentially read that language out of the contract completely. They disregard it. They say it doesn't mean anything. Well, if the parties, by signing this agreement, had agreed to arbitration, then this doesn't mean anything. But it must mean something. Because the court, when interpreting a contract, if there are two clauses that may appear to conflict, the preferred interpretation is the one that is harmonious and gives effect to both clauses. And that is exactly what this following provision does. Because that provision that Mr. Volbrecht relies on that says, you know, if there's one arbitrator or two arbitrators and they reach a decision, such decision shall be a condition proceeding to any written legal action, is what happens if you agree to arbitration. There has to be an agreement to arbitrate it in the first place. And there wasn't here. By signing this contract, the city of Redfield did not agree to arbitration. They had the right, under this dispute resolution provision, to agree or not to agree at a later time. That's why the provision says that the parties agreed to arbitration. So I think under general principles of contract law and contract interpretation, you have to give effect to all of the provisions. You can't read one of them out completely, which is what Quam attempts to do here. And the only cases that we found from other jurisdictions that had similar provisions read those provisions to say that that didn't mean that the parties had agreed. They had to, once the dispute arose and was unable to be resolved through mediation, they had to agree to arbitration or else there wouldn't be one. So the city of Redfield had the right to reject arbitration in this case under the terms of the contract. And the only way to interpret it the way Quam wishes the court to do is simply to ignore that provision and say it doesn't exist. It's not there. And under principles of contract law, I think that the court should give effect to all of these provisions. I don't have anything else I would ask the court to unless the court has questions. I would ask the court to affirm the decision of the district court denying the motion to compel arbitration. Thank you. Okay, thank you, Mr. Shaffer. Okay, I promised you a minute. Well, don't worry. A couple of very brief points. One, contrary to counsel's position, the base cert cases are very clear that there's an arbitration provision that means there's a presumption in favor of arbitration. That's the ITPR provisions. Two, following up on Judge Kelly, they're the party that is trying to reality provisions. Party demanding is meaningless if it has to be mutual consent. Conditioned perceived language is meaningless if there has to be mutual consent. To read it harmoniously, the best way to read it harmoniously, and frankly, I still disagree whether you have to read it harmoniously because if they're conflicting, the FAA says you can have arbitration. You can then have ambiguity. But to read it harmoniously, to include the party demanding, the conditioned perceived language, the may language, and the party agreement language, well, again, American apostasis, the may language assumes that there is an implicit party agreement. Just making that express here does not add anything to it, Thank you very much. We thank you for your audience, and we will take it under advisement and be back here as soon as we can. Thank you very much.